## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAVID BRIGHTWELL,                          *

Plaintiff,                                 *

v.                                         *            Civil Action No. RDB-18-3807

WARDEN OF MCI-J,                           *
COMMISSIONER OF CORRECTION,
F. TODD TAYLOR, *Executive Director*       *
*Inmate Grievance Office,*
ROBIN WOOLFORD, *Deputy Director*          *
*Inmate Grievance Office,*
AUDREY BROWN, *Administrative Officer II*  *
*Inmate Grievance Office,*
KRANICH, *CO II*, aka BOBBY HILL           *
SGT. ABIODUN ADAMOLEKUN,
ROBERT DEAN, *Security Chief*              *
SGT. SCHMITT, *Institutional ARP Coordinator,*
CAPTAIN S. ROSS,                           *
PATUXENT INSTITUITON CHRONIC CARE
DOCTOR OF 1/15/17 TO 6/14/17               *
MCI-J HOSPITAL ADMINISTRATOR,
MCI-J CHRONIC CARE DOCTOR,                 *
IID SUPERVISOR,
JANE AND JOHN DOE'S IID                    *

Defendants.                                *
                                          ***

## <u>MEMORANDUM OPINION</u>

Self-represented Plaintiff David Brightwell brought this civil action pursuant to 42 U.S.C.

§ 1983 against the Warden of Maryland Correctional Institution Jessup ("MCI-J"), Commissioner

of Correction F. Todd Taylor, Executive Director of the Inmate Grievance Office Robin Woolford,

Deputy Director Inmate Grievance Office Audrey Brown,[1] Administrative Officer II Inmate

Grievance Office CO II Kranich aka Bobby Hill, Sgt. Abiodun Adamolekun, Chief of Security

---

[1] Audrey Brown has not been served with the Complaint. For the reasons that follow, the Complaint against her is dismissed.

Robert Dean, Sgt Schmitt, Institutional ARP Coordinator Captain S. Ross, "Patuxent Institution Chronic Care Doctor of 1/15/17 to 6/14/17," "MCI-J Hospital Administrator," "MCI-J Chronic Care Doctor," "IID Supervisor," and "Jane and John Doe's IID."[2]  In his Complaint Brightwell asserts violations of his constitutional rights arising from Defendants' use of excessive force, conspiracy, denial of proper medical care, sexual harassment, mental abuse, abuse of authority, harassment, and retaliation in placing him in segregation in violation of his rights under the Eighth and Fourteenth Amendments.  He also claims violations of Maryland state law.  ECF No. 1, pp. 3, 7.  As relief, he seeks monetary damages and injunctive and declaratory relief.  ECF No. 1, pp. 29-30.

On December 9, 2019, Defendants Warden of MCI-J, the Commissioner of Correction, Executive Director of the Inmate Grievance Office (IGO) F. Todd Taylor, Deputy Director of the IGO Robin Woolford, Captain Shanea Ross, Sgt. Abiodun Adamolekun, Institutional Administrative Remedy Procedure (ARP) Coordinator for MCI-J Sgt. Sheila Schmitt, and C.O. II Kellen Kranich,[3] filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment supported by numerous exhibits.  ECF No. 31.  Robert Dean has filed a Motion to join the Motion for Summary Judgment (ECF No. 51) which is GRANTED.  On May 11, 2020, Brightwell filed a response in opposition. ECF No. 40. Also pending are Brightwell's Motions for Reconsideration of the Court's Order denying his Motion for Other Relief (ECF No. 37), for Temporary Restraining Order (ECF No. 43) and to Compel (ECF No. 49).  A hearing is not necessary.  *See* Local Rule

---

[2] Brightwell was previously advised that Defendants "Patuxent Institution Chronic Care Doctor of 1/15/17 to 6/14/17," "MCI-J Hospital Administrator," "MCI-J Chronic Care Doctor," "IID Supervisor" and "Jane and John Doe's IID" were insufficiently identified and no attempt at service of the Complaint on these Defendants would occur. ECF No. 35.  Brightwell has not identified these Defendants and accordingly, these Defendants are dismissed from the case.

[3] The Clerk shall amend the docket to reflect the correct names of Defendants.

105.6 (D. Md. 2018).  For the reasons explained below, the Court will DENY Brightwell's pending motions, DISMISS Brightwell's state law claims and claims against "Patuxent Institution Chronic Care Doctor of 1/15/17 to 6/14/17," "MCI-J Hospital Administrator," "MCI-J Chronic Care Doctor", "IID Supervisor", "Jane and John Doe's IID", and Audrey Brown, and GRANT Defendants Warden of MCI-J, the Commissioner of Correction, Executive Director of the Inmate Grievance Office (IGO) F. Todd Taylor, Deputy Director of the IGO Robin Woolford, former Captain Shanea Ross, Sgt. Abiodun Adamolekun, Institutional Administrative Remedy Procedure (ARP) Coordinator for MCI-J Sgt. Sheila Schmitt, C.O. II Kellen Kranich, and Chief of Security Robert Dean's Motion, construing it as one for summary judgment.[4]  Accordingly, summary judgment is entered in favor of Defendants Warden of MCI-J, the Commissioner of Correction, Executive Director of the Inmate Grievance Office (IGO) F. Todd Taylor, Deputy Director of the IGO Robin Woolford, former Captain Shanea Ross,  Sgt. Abiodun Adamolekun, Institutional Administrative Remedy Procedure (ARP) Coordinator for MCI-J Sgt. Sheila Schmitt, C.O. II Kellen Kranich, and Chief of Security Robert Dean's and against Brightwell.

## Background

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice.

---

[4] Defendants' dispositive submission will be treated as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered.  *See Bosiger v. U.S. Airways*, 510 F. 3d 442, 450 (4th Cir. 2007).

*Sec'y of State for Defense v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007).

### A.     Brightwell's Allegations

Brightwell alleges that on June 15, 2018, CO II Kranich had Brightwell's cell door opened and asked what he was doing. ECF No 1, p. 11.   Brightwell responded and Kranich directed Brightwell to come to the cell door, which he did, then Kranich patted Brightwell down and instructed him to step outside of his cell.  *Id.*   Kranich searched Brightwell's cell and directed Brightwell to go to the front of the F-Building Center Control area.   *Id.*   When Brightwell asked why, Kranich responded that Brightwell was going to see the building Lieutenant.   Brightwell told Kranich that "for [his] own protection, I don't go to the Lt. and Captain building."[5]  *Id.*   Kranich replied, "You're not going to the Lt. and Captain building" and had Brightwell escorted out of F-Building.   As they approached the Lieutenant and Captain building, Brightwell refused to enter that building.  *Id*., p. 12. Kranich asked if Brightwell would go to the "Lower-K area" and Brightwell agreed.   He was then told by Kranich that he was going to be strip searched.  *Id.*  Brightwell asked again what was going on.   *Id.*  Brightwell gave all of his clothing to Kranich and was told three time to bend and cough.  *Id*., 12.  He was also told to bend  and spread his "but cheeks."  Brightwell could not comply because his right hand has a plate in it and he is unable to put his right arm behind his back. *Id.*  Kranich asked why, despite Brightwell's apparent ability to move his arm, he could not move his arm behind his back as directed.   *Id.*   Brightwell replied, "consult medical about it."   *Id.*   Kranich directed Brightwell to bend and cough again but Brightwell refused, stating that he had already done that three times.  *Id*., pp. 12-13.  Brightwell was directed to get dressed and return to F-Building.  *Id*., p. 13. Brightwell asked for Kranich's name and told him he was going to write him up but Kranich declined to give his name, replying

---

[5] None of the parties have explained what this building is or its significance.  Presumably, it is a building where administrative staff have offices.

that everyone knew who he was.  Brightwell discovered Kranich's name from the F-Building Sergeant.  *Id*.  He filed an administrative remedy (ARP) against Kranich for "harassment, lies, sexual harassment, mental abuse, abuse of authority, unprofessional behavior, etc."  *Id*., p. 13.

The following morning, Brightwell went to Islamic class and on his way passed through a metal detector which he claims did not alert.  An unidentified correctional officer nevertheless instructed Brightwell to go back through.  Brightwell asked why, but the officer again instructed him to go through the metal detector.  ECF No. 1, pp 13-14.  Brightwell objected, claiming he was being harassed, and another officer came out of the chapel and accused Brightwell of always causing problems.  Brightwell responded that he was always being harassed and was not speaking to that officer.  *Id*., p. 14.  Sgt. Adamolekum then stated that Brightwell was always causing problems, which Brightwell denied, again asserting that it was he who was always harassed.  Sgt. Adamolekum directed Brightwell to stand aside but Brightwell questioned why and he and Adamolekum  argued over the directive.  Ultimately, Adamolekum grabbed Brightwell and Brightwell and another inmate objected.  Adamolekum let go of Brightwell.  Another Muslim inmate directed Brightwell to go through the metal detector again, which he did, "and that was the end of the matter."[6]  *Id*., p. 15.  Sometime later, Brightwell's right arm began to hurt and the following morning, June 17, 2018, Brightwell went to the MCI-J Medical Department where he was given two ice packs.  *Id*.

In his ARP regarding the incident with Adamolekun, Brightwell requested that the Internal Investigation Division ("IID") investigate the incident, but no one from IID interviewed Brightwell. *Id*., p. 24.  He claims that the grievance process "does not work and cannot work

---

[6] In a declaration attached to his Motion for Injunctive Relief Brightwell states that he "was assaulted by prison staff Sgt. Abiodun Adamolekun on June 16, 2018 for no reason, as well as other matters in this complaint." And that as a result his "already[y] injured right arm was injured more causing much more pain than I was already experiencing."  ECF No. 43-3, p. 1, ¶¶ 3 and 4.

because all parties are a aid and abet to each other . . . ." *Id.*, p. 24.

On June 18, 2018, Brightwell saw the Sergeant at the B-Building Control Center, who advised Brightwell that he had a pass to go to the Lieutenant and Captain building. *Id.*, p. 15. Brightwell told the Sergeant that he does not go to that building and instead returned to his cell. *Id.* A short time later Security Chief Robert Dean, and an unidentified officer who "had just signed a 'Request for Administrative Remedy'" came to Brightwell's cell and directed he come with them to be escorted to the Lieutenant and Captain building. *Id.*, p. 16. While on their way Dean explained that Brightwell was being taken to the other building regarding two complaints Brightwell recently filed. *Id.*, p. 16. Brightwell advised Dean that, "for his own protection" he does not go to that building and Dean told him that he would either go as directed or be placed on segregation. *Id.*, p. 16. Brightwell refused to go the supervisor's building and was handcuffed and taken to segregation, where Dean called an unidentified person regarding Brightwell's housing status. *Id.*, p. 17.

Thereafter Brightwell was served with a Notice of Assignment to Administrative Segregation that stated he was being considered for placement on voluntary or involuntary protective custody per Captain Ross. *Id.*, p. 17. Brightwell claims that this evidences a "great conspiracy etc., by the Warden of MCI-J, Robert Dean, Security Chief Captain S. Ross, etc. To see more clearer, the plaintiff had already been placed on 'Administrative Segregation' by a 'false infraction report' by Robert Dean, Security Chief on 6/18/18. Clearly, it can be seen of Captain S. Ross, 'aiding and abetting' Robert Dean, Security Chief action of 'wrongfully' placing the plaintiff on segregation." *Id.*, p. 17.

Brightwell states that he never reported to Dean, or anyone else, that he was in fear, and that as a "sincere striving Muslim" he fears nothing but Allah. *Id.*, pp. 17-18. Brightwell explains

that he does not go to the Lieutenant and Captain's building because on October 18, 2017, MCI-J captains disrespected him and moved toward him yelling loudly.  Brightwell then filed an ARP against the officers involved but the ARP was dismissed on procedural reasons showing "how MCI-J staff cover and aid and abet each other in wrong doings against [Brightwell]." *Id*., p. 19; Exhibit 1.

Robin Woolford, Deputy Director of the Inmate Grievance Office (IGO) dismissed Brightwell's appeal finding it lacked merit, however, Brightwell maintains that he was placed on segregation for no reason and without cause.  *Id*., pp. 19-20; Exhibit 2.  Similarly Audrey Brown, Administrative Officer II also dismissed Brightwell's appeal as lacking in merit.  *Id.*, p 20; Exhibit 3.

Brightwell alleges that "the Warden of MCI-J has allowed his subordinates to conspire to discriminate, harass, lie, write false infractions, mentally abuse, abuse their authority, retaliate etc., against the plaintiff."  ECF No. 1, p. 20.  Brightwell claims that Robert Dean knew that Brightwell did not go into the Lieutenant and Captain Building because the Warden would not protect Brightwell and Brightwell had the right to protect himself.  *Id*.  He also states that Dean filed a false rule violation.  *Id*.  Brightwell denies ever telling Dean that he feared for his safety.  *Id*.

During the adjustment hearing held after the incident with Dean, Hearing Officer Lucretia Harrell did not allow Brightwell to leave the hearing in order to get his copy of the infraction.  ECF No 1, p. 26.  Additionally Harrell accused Brightwell of not being cooperative and delaying the hearing and had him removed from the hearing, allegedly denying him due process.  *Id*., p. 26.

Brightwell claims that Sgt. Schmitt, MCI-J Institutional ARP Coordinator, aids and abets MCI-J staff by covering up their wrongful actions.  *Id*.  Specifically, Brightwell claims that his ARP regarding the incident with Dean was not about disciplinary procedures but rather about

Dean, Ross, and the Warden conspiring to create false infractions, harassing, and retaliating against Brightwell.  Nevertheless the ARP complaint was dismissed.  *Id*., pp. 21-22.

Brightwell claims that the Commissioner of Corrections and his staff, as well as F. Todd Taylor, Jr., Executive Director of the IGO, Robin Woolford, and Audrey Brown aided and abetted the Warden of MCI-J and his subordinates in their actions taken against Brightwell.  *Id*., p. 22.

In regard to his arm injury, Brightwell states that his right arm was injured by unidentified correctional staff when he was housed at the Maryland House of Correction in 2006, and further injured by correctional staff in 2011 when he was housed at the Roxbury Correctional Institution. ECF No 1, p. 22.  Brightwell claims that the conduct of Adamolekun further injured his right arm. *Id*., p. 22.

Seemingly unrelated to the foregoing, which all occurred at MCI-J, Brightwell states that he was sent to Patuxent Institution (PAX) in 2017 and refused to sign anything or participate in the mental health program, and as a result from January 15, 2017 to June 14, 2017, the "Patuxent Institution Chronic Care Doctor" refused to give Brightwell his pain medication, which Brightwell claims violated his rights under the Eighth Amendment and constituted negligence under Maryland law.  *Id*., p. 23, 26.

When Brightwell transferred to MCI-J he requested that the Chronic Care doctor provide him pain medication but no one provided it.  *Id*., p. 23.  Brightwell further claims that the failure of the MCI-J Hospital Administrator, the MCI-J Chronic Care Doctor, and other MCI-J Medical Department staff in not allowing him to see an expert eye or arm doctor constituted negligence under Maryland law and violated his rights under the Eighth Amendment.  *Id*., pp. 26-27.

Additionally, Brightwell claims that on September 12, 2018, he was called to the MCI-J medical department to have x-rays of his eyes taken and ever since that time had pains in his eyes

and bad headaches.  *Id*., p. 23.  Brightwell has submitted sick call requests for an examination by

an eye expert but nothing has happened.  *Id*.

###    B.    Defendants' Response

Brightwell was transferred from Eastern Correctional Institution-West (ECI-W) to PAX on

January 13, 2017.  ECF No. 31-5, p. 2 (Traffic History).  He was transferred from PAX to MCI-J

on June 13, 2017, where he remained until August 16, 2019, when he was transferred to Jessup

Correctional Institution (JCI).  *Id*., p. 1.

###    1.  Incident involving Kranich

Kellen Kranich, CO II, avers that on June 15, 2018 he received orders to conduct a strip-

search of Brightwell.  ECF No. 31-6, ¶ 2 (Kranich Decl.).  During the search, Brightwell was

disagreeable and hesitant to comply with Kranich's instructions. *Id*., ¶ 3.  Specifically, when

Kranich directed Brightwell to squat or bend over and cough, Brightwell complained about

repeating the act.  *Id*.  Brightwell did not want to comply with spreading his buttocks which allows

for a visual inspection of the rectum, which is required during a strip search under Department of

Public Safety and Correctional Services (DPSCS) and Division of Correction (DOC) policies and

procedures for conducting strip searches.  *Id*.  Brightwell complained to Kranich that he could not

reach behind him with his right arm, but it appeared to Kranich that he had full range of motion

and use of that arm. *Id*.  Kranich ordered Brightwell to bend again and cough but Brightwell

refused and Kranich told him to get dressed. *Id*.  Kranich did not write an infraction regarding the

incident.  *Id*.

The following day Brightwell filed an ARP alleging Kranich sexually harassed and

mistreated him during the strip search.  ECF No. 31-7, pp. 13-14 (ARP MCI-J-0368-18 and related

documents).  On June 18, 2018, Prison Rape Elimination Act (PREA) Officer CO II Fateema

Mobley, interviewed Brightwell who stated he felt he was being harassed by Kranich because he was strip searched without probable cause and felt the search was intended to humiliate him. *Id.*, p. 5.  Mobley advised Brightwell that Kranich had the right to direct him to spread his buttocks to expose the rectal area for a visual search and he must comply.  *Id.*  Mobley also advised Brightwell that Kranich was following policy and the proper procedure for conducting a strip search.  She declined to open a PREA case.  *Id.*  In her written memorandum, Mobley explained a PREA case was unwarranted because the definition of sexual harassment is repeated and unwanted sexual advances and Brightwell was unable to state how Kranich sexually harassed or mistreated him.  *Id.*

### 2.  Incident involving Adamolekun

Sgt. Abiodun Adamolekun avers that on June 16, 2018, he was assigned as the Utility Officer in Charge (OIC). ECF 31-8, ¶ 3 (Adamolekun Decl.).  At approximately 8:30 a.m., he was on post with Officer Luna monitoring inmate "chapel movement."  *Id.*  Brightwell was directed to walk through the metal detector, but as he passed through he did not clear it.  *Id.*  Sgt. Adamolekun ordered Brightwell to walk between the two metal detectors and place his personal items on the chair before attempting to walk through the metal detector again.  *Id.*, ¶ 4.  Brightwell ignored Adamolekun's instructions and attempted to walk through the metal detector again to enter the chapel.  *Id.*  Sgt. Adamolekun ordered Brightwell to move and stand away from the entrance to the chapel but Brightwell refused to comply with the orders.  *Id.*  Adamolekun placed his hands on Brightwell's arms and prepared to remove him from the area if he continued to refuse to comply with the orders.  *Id.*  Adamolekun gave Brightwell another order and pointed to the chair where Brightwell was told to put his personal items.  At that point, Brightwell stopped, stepped aside, placed his items on the chair as instructed, and walked through the metal detector, without setting it off.  *Id.*  He then entered the chapel.  *Id.*  Later that day, during lunch, Brightwell did not clear

the metal detector located in front of the Main Dining Room.  *Id.*, ¶ 5.  Adamolekun again directed Brightwell to put his belongings on a chair, but instead Brightwell turned back and told Adamolekun that he would "write it up" and walked away.  *Id.*

Brightwell filed ARP MCI-J-0375-18 on June 17, 2018, regarding the incident with Adamolekun outside of the chapel entrance.  ECF No. 31-10 (ARP MCI-J-0375-18).  The ARP was dismissed because it was being investigated by IID under Case No. 18-35-01131.  *Id.*, p. 1.

Detective Sergeant Angel Thompson of IID investigated Brightwell's claims regarding Adamolekun.  ECF No. 31-16, p. 6.  (IID Case No. 18-35-01131 I/C.)  She interviewed Brightwell regarding the incident.  *Id.*  Brightwell explained that the incident was one example of a pattern of continual harassment by staff at MCI-J but did not provide any specific examples.  *Id.*  As to the incident with Adamolekun, Brightwell reported that after he questioned Adamolekun's instructions, Adamolekun grabbed Brightwell's arms for 20-30 seconds to force him to move.  *Id.*, p. 6.  The grabbing did not cause any abrasions, bruising or scars, but he claimed it caused swelling and pain because he has plates in both of his arms, and after the incident the pain in his arms intensified.  *Id.*  Brightwell told Thompson that the following day[7] he was seen by medical staff and given ice packs.  *Id.*  He also reported that x-rays were taken but he was never provided the results.  *Id.*  Brightwell indicated his desire to pursue criminal charges against Adamolekun.  *Id.*, pp. 6-7.

Thompson investigated whether any surveillance was available of the incident, but learned it was not.  *Id.*, p. 7.  No Serious Incident Report or Use of Force Report was prepared as a result of the encounter.  *Id.*  Thompson determined that Brightwell was given a lawful order by

---

[7] Brightwell's medical records do not contain a report that he was seen on June 17, 2018, but show he was seen on June 20, 2018 complaining of pain in his right arm.  ECF 31-9, pp. 121-125.  Brightwell avers that he was seen by MCI-J Medical Staff on June 17, 2018.  ECF No. 43-2, p. 1, ¶ 5

Adamolekun to walk through the metal detector but instead of complying questioned the order and then refused to comply.  *Id*.  Brightwell then refused Adamolekun's direction to move away from the entrance of the chapel.  Adamolekun grabbed Brightwell's arms to remove him from the area. *Id*.  Thompson determined that Adamolekun's actions did not rise to assault, but instead were an attempt to remove a non-compliant inmate from an area.  *Id*.  Thompson declined to seek criminal charges against Adamolekun and directed that no further action would be taken and the case was closed.  *Id*.

### 3.  Incident with Dean

On June 18, 2018, Security Chief Dean learned that Brightwell filed an ARP alleging he was assaulted by Adamolekun.  ECF No. 31-11, p. 7 (Notice of Inmate Rule Violation 2018-039 and related documents).  In light of Brightwell's history with uniformed correctional staff Dean took the lead in investigating Brightwell's claims. *Id*.  Dean and Lt. McConneha went to Brightwell's cell and asked him to get his identification and exit the cell for escort, which he did. However, when they reached the outer vestibule area, Brightwell stopped walking.  *Id*.  Brightwell asked who Dean was, where he was going, and why.  Dean answered Brightwell's questions and explained that he was being taken to the supervisor's suite (Upper K) to investigate his claims of being assaulted by staff.  *Id*.  Brightwell refused to report to Upper-K and expressed his fear of staff.  *Id*.  Dean advised him that the area was under surveillance and reminded Brightwell that he, Dean, was the Chief of Security for the institution but Brightwell refused to proceed.  *Id*.  Dean advised Brightwell he would receive a notice of inmate rule violation for disobeying a direct order. *Id*.  Brightwell received a Notice of Infraction (NOI) on June 20, 2018, from Dean charging him with violating inmate rules #312 (interfering with a search) and #400 (disobeying a direct lawful order). *Id*.  In the NOI, Dean noted that Brightwell could not be compelled to give a statement and

had no reason to fear for his personal safety that day; he was not placed in restraints and was free to walk on his own. *Id.* Dean also noted Brightwell's documented history of disobeying orders directing him to report to different areas of the institution. *Id.* Dean further noted that Brightwell's behavior undermined the order and discipline of MCI-J and described Brightwell's conduct as willful and unnecessary. *Id.*

Brightwell pleaded not guilty to the rule violations at his adjustment hearing which was held on June 29, 2018. ECF No. 31-11, p. 3. He declined the institution's recommendation for an incident report and ultimately was removed from the hearing due to his being uncooperative and delaying the hearing by insisting that he had another NOI for the incident in his cell in which he requested evidence, but a record review conducted by the hearing officer showed there was no such report. *Id.*, pp. 3-4. The institution did not pursue the rule #312 violation and requested an incident report regarding the rule #400 violation. Hearing Officer Harrell agreed with that recommendation and dismissed the rule #312 violation and found Brightwell not guilty of the rule #400 violation. *Id.*, pp. 3-4.

### 4. Assignment to Segregation

Because of Brightwell's reports that he feared for his safety from staff members, and in accordance with policy, on June 18, 2018, he was placed on administrative segregation while he was considered for protective custody. ECF No. 31-13, ¶ 4 (Ross Decl.); ECF No. 31-14, p. 1 (Notice of Assignment to Administrative Segregation). Major Shanea Ross prepared the paperwork for Brightwell's assignment to administrative segregation, which Brightwell refused to sign. ECF No. 31-13, ¶ 3; *see also* ECF No. 31-14; ECF No. 31-15 (Case Management Assignment Sheet). Ross avers that Brightwell was a difficult inmate and a management problem. When he was called to be interviewed regarding ARPs he filed, he would refuse to meet with staff. *Id.* On

13

the same day he was placed on administrative segregation, Brightwell requested to withdraw his ARP and return to population.  ECF No. 31-15, p. 1.  On July 2, 2018, a case management note was entered that Brightwell no longer wished to return to general population and his assignment to administrative segregation was continued.  *Id*., p. 2.  Later he denied being assaulted by a DOC employee and again requested he be returned to population.  *Id*., p. 5.  The Administrative Segregation Investigative Report recommended Brightwell be transferred to another facility (ECF No. 31-14, p. 2) and he was continued on administrative segregation pending that transfer.  ECF No. 31-15, p. 3.

### 5.    Medical Records

On June 20, 2018, Brightwell was seen in the medical department.  ECF No. 31-9, pp. 121-124 (Medical Records).  He requested an x-ray of his right hand but would not allow the right hand to be examined.  *Id*., p. 121.  He was also being seen that day for follow-up because he was on the second day of a hunger strike.  *Id*.  He was seen by Dr. Sisay on June 22, 2018, for continued monitoring of his hunger strike.  *Id*., p. 126.  No swelling, tenderness or crepitation was noted on examination of Brightwell's right arm.  *Id*.  On June 27, 2018, he advised Physician's Assistant Emmanuel Esianor, that he had no medical complaints.  *Id*., p. 135.  X-rays of the right arm taken in July and August showed evidence of a chronic injury with post-surgical metallic hardware in place.  However, there was no evidence of an acute fracture, dislocation or subluxation and the alignment was described as anatomical.  *Id*., pp. 125, 128, 138, and 144-46.  On August 5, 2018, PA Esianor examined Brightwell due to complaints of wrist pain.  *Id*., p. 142.  It was noted that Brightwell had a history of right wrist fractures corrected with internal rods and screws.  *Id*.  Brightwell denied aggravating factors or a recent injury.  *Id*. Because he had adequate pain medication no new medications were ordered.  *Id*.  A note dated October 3, 2018, indicates

14

Brightwell had previously undergone right arm reconstruction surgery. *Id.*, pp. 152-54. He reported that his pain medication was not working and rated his pain as a "10." *Id.*, p. 152. Brightwell reported that an officer grabbed him by his arm four months earlier and the pain worsened. *Id.* The provider noted that x-rays showed Brightwell's hardware was in place, an old scar was on his right arm, but there was no swelling or weakness. *Id.*, p. 153.

On October 17, 2018, Brightwell complained that he was put back on Robaxin which he refused to take  because it would not work. He requested a  prescription for Neurontin instead. *Id.*, p. 157. He was advised that Neurontin was no longer prescribed off label and was offered Cymbalta, which he declined. *Id.* He was referred to Chronic Care for pain management. *Id.* Dr. Sisay examined Brightwell on October 26, 2018. *Id.*, p. 159. Brightwell reported pain in his neck, and pain in his right arm which was attributed to a gunshot wound and surgery in the 1990s. *Id.*, p. 159. No swelling or tenderness was noted in Brightwell's right arm. *Id.* Dr. Sisay explained why Neurontin was inappropriate for pain relief; Brightwell declined other analgesic medication offered and agreed to try physical therapy. *Id.* Brightwell continued to be seen regularly in the medical department for follow up and in response to sick call slips he submitted throughout his incarceration at MCI-J. *Id.*, pp. 166-212. Nevertheless, he has regularly declined treatment, referrals, diagnostic testing, and medications offered. *Id.*, pp. 171, 173, 174, 179, 181, 182, 238, 240.

### 6. Grievance process

On October 19, 2017, Brightwell filed ARP MCI-J-0843-17 alleging that on October 18, 2017, Lt. Lester and two unidentified officers yelled loudly and disrespected him. ECF No. 31-17,  pp. 7-8 (ARP  MCI-J-0843-17).  The ARP was dismissed for procedural reasons with Brightwell directed to re-submit the ARP providing the names of the unidentified officers. *Id.* p.

7.  Brightwell re-filed the ARP on October 26, 2017, but failed to follow the instructions regarding the names of the other officers and the ARP was dismissed for failure to follow instructions.  *Id*., pp. 5-6.  Brightwell's ARP appeal was dismissed for procedural reasons.  *Id*., p. 1.

Sgt. Sheila Schmitt, MCI-J's ARP Coordinator, denies conspiring with staff against Brightwell or any other inmate, and also denies retaliating against Brightwell or any other inmate. ECF No. 31-18, ¶¶2-3.  Schmitt avers that as ARP coordinator she abides by the policies and procedures set forth in Code of Md. Reg. 12.02.28 and DOC 185.0002 regarding the processing of ARPs.  *Id*., ¶ 4.  If an inmate disagrees with the dismissal of an ARP they may file an appeal to the Commissioner of Correction.  *Id*., ¶ 5.  Between June 2, 2017 and September 17, 2019, Brightwell filed 71 ARPs.  ECF No. 31-21 (ARP index).

Samiyah G. Hassan, Administrative Specialist II, IGO, avers that Brightwell filed two grievances with the IGO.  ECF No. 31-22, ¶ 3 (Hassan Decl.).  The first, IGO No. 20181236 filed on July 23, 2018, was a grievance appeal from the disposition of ARP MCI-J 0399-18 concerning Brightwell's complaints that Ross, Dean, and Warden Morgan retaliated against him and conspired to place him on segregation.  ECF No. 31-22, ¶ 4.  The second, IGO No. 20181262 filed on July 27, 2018, was an appeal from the disposition of his disciplinary hearing held on June 18, 2018. *Id*., ¶ 5.  Both grievances were administratively dismissed by the IGO for Brightwell's failure to state a claim. *Id*., ¶¶ 4-5.

## Non-Dispositive Motions

On March 20, 2020, this Court entered an Order: (1) denying Brightwell's Motion to Compel which erroneously argued that Defendants' response to the Complaint was overdue; (2) denying Brightwell's Motion to Appoint Counsel; and (3) granting in part and denying in part Brightwell's Motion to Have the Remainder of Defendants Served-- directing service on Audrey

Brown and Robert Dean, but declining to attempt service on behalf of "Patuxent Institution Chronic Care Doctor of 1/15/17 to 6/13/17," "MCI-J Hospital Administrator;" "MCI-J Chronic Care Doctor;" "IID Supervisor;" and "Jane and John Doe's IID" finding that these Defendants were insufficiently identified.  ECF No. 35.  The Order also granted Brightwell an additional 28 days to respond to the dispositive motion.  *Id*.  Brightwell filed a Motion for Reconsideration of the portion of the Order denying his request for appointment of counsel.  ECF No. 37.  Brightwell argues that he is housed on segregation and has limited access to legal materials.  *Id*.  He offers no justiciable reason to alter the Court's previous findings.  He is able to articulate the facts of his case without discernible difficulty and there are no exceptional circumstances that warrant the appointment of counsel.  *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).  Additionally, the Court is in receipt of Brightwell's response in opposition to the dispositive motion which is supported by a memorandum and exhibits.  ECF No. 40.  The Motion for Reconsideration (ECF No. 37) is DENIED.

The Court is also in receipt of Brightwell's Motion for Temporary Restraining Order and Preliminary Injunction.  ECF No. 42.  Brightwell reiterates his claim that he was assaulted by Adamolekun and states that he is being denied appropriate medical care.  ECF No. 43-1, p. 1. Brightwell states that Defendants have repeatedly denied him access to an expert arm doctor as well as an expert eye doctor.  *Id*., p. 2.  Brightwell states that Dr. Andrew Moultrie, who he incorrectly identifies as a Defendant in this case, improperly discontinued his pain medication.  *Id*., p. 3.  Brightwell claims that in May of 2020, unidentified Defendants intentionally interfered with his medical care, but he fails to allege any facts in support of this claim, other than to say his medication was reduced and no doctor explained that to him.  *Id*., pp. 5-6; ECF No. 43, p. 2. Brightwell states that JCI Medical Contractors and prison officials have intentionally denied him

access to medical experts and ignored his pain. *Id*., p. 3.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689-90 (2008).  A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009).  As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd. v. Breakthrough Med. Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).  In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).  Brightwell's motion concerns his claims of denial of adequate medical care at his current place of confinement.  None of the parties responsible for his care at JCI are parties to these proceedings and as such Brightwell has failed to demonstrate the likelihood of success on the merits and for this reason alone his request for injunctive relief must be DENIED.  Moreover, Brightwell has also failed to demonstrate that he is likely to suffer irreparable harm or that the balance of equities tips in his favor.

Brightwell's Motion to Compel (ECF No. 49) is also DENIED.  Brightwell states that he forwarded discovery materials to counsel for Robert Dean, who failed to respond.  There has been no Scheduling Order issued in this case setting forth deadlines for discovery. *See* Local Rule 803.1 (D. Md. 2018).  As such, Brightwell is not entitled to the discovery he seeks.

Further, Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
>   (1) Defer considering the motion or deny it;
>   (2) Allow time to obtain affidavits or declarations or to take discovery; or
>   (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'"  *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact

sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).  Brightwell's Motion to Compel is not accompanied by an affidavit, and more importantly Brightwell does not explain what discovery he seeks or why such discovery is necessary for him to oppose the summary judgment motion.  The Motion to Compel is DENIED.

### Dispositive Motion

### Standards of Review

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger*, 510 F.3d at 450.  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule

56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. The City of Salisbury, Maryland*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam).  But, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).

Because he is proceeding pro se, Brightwell's submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, this Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding

to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted.)

**Discussion**

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56.  They argue that (1) Brightwell fails to demonstrate an Eighth Amendment claim of use of excessive force or a state tort claim of battery; (2) his claims regarding verbal threats fail to state a claim; (3) his claims regarding denial of medical and psychological care fail to state a claim and Defendants are otherwise entitled to summary judgment; (4) Brightwell fails to demonstrate violations of his Eighth or Fourteenth Amendment rights due to his placement on segregation; (5) Brightwell's claims that staff lied and abused their authority fails to state a claim; (6) Brightwell fails to state a claim that staff failed to protect him from harm and Defendants are otherwise entitled to summary judgment; (7) Brightwell fails to state a claim of harassment, retaliation, or conspiracy; (8) he fails to demonstrate that his due process rights were violated during his adjustment hearing; (9) his claims regarding issues with the ARP process fail to state a claim; (10) Brightwell failed to exhaust his administrative remedies as to all claims save his placement on administrative segregation and the conduct of his disciplinary proceeding; (11) allegations that state policies were violated fail to state a claim; (12) there is no respondeat superior liability and Defendants Warden of MCI-J, Commissioner of Correction, Executive Director of the IGO F. Todd Taylor and Deputy Director of the IGO Robin Woolford are entitled to dismissal; and (13) Defendants are entitled to qualified immunity.  ECF No. 31-2.

## I.    Excessive Force

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,*

428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams v, Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

To satisfy the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted).

The subjective element requires evidence that prison personnel used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In evaluating this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

Viewing the facts in the light most favorable to Brightwell, it is clear that Adamolekun briefly grabbed Brightwell after he repeatedly refused Adamolekun's direction to pass through the metal detector again and/or to stand aside. Brightwell admits that he refused to comply with Adamolekun's orders and that the touching was brief, lasting between 20-30 seconds. Because Brightwell repeatedly refused Adamolekun's direct orders, and because Brightwell's intentions

23

were unknown, it was reasonable for Adamolekun to briefly grab Brightwell in order to secure him and gain his compliance.   The encounter was brief, accompanied by additional verbal instructions, and as soon as Brightwell indicated his compliance Adamolekun released him.

The entire incident –from the time Adamolekun engaged with Brightwell to the time Brightwell agreed to go through the metal detector-- lasted a matter of minutes with Adamolekun's placing his hands-on Brightwell, who did not appear to Adamolekun to have any problems with his arms, no longer than 30 seconds.   The Court agrees with the IID conclusion that during that time, Adamolekun used only the necessary amount of force to gain control of Brightwell, who was disobedient and posed a threat to institutional security.   Brightwell does not meet his burden to identify evidence that show that a genuine dispute of material facts exits to support a claim of cruel and unusual punishment.   Similarly Adamolekun's conduct does not rise to an assault and battery under Maryland law which provides that a battery is the impermissible touching by one person upon the body of another.   *See Sasa v. Darling*, 531 A. 2d 696 (1987).   Adamolekun is entitled to summary judgment on these claims.

Similarly Kranich is also entitled to summary judgment.   Kranich was directed to conduct a strip search of Brightwell, which he did in compliance with DPSCS and DOC regulations. Brightwell was recalcitrant and refused to comply with Kranich's directives.   Nevertheless, Kranich did not physically engage with Brightwell, nor did he issue Brightwell any infraction as a result of the interaction.   Accordingly, Brightwell cannot sustain a claim of excessive force as to Kranich.

To the extent Brightwell claims Kranich's conduct constituted sexual harassment, his claim fails.   "Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, *see Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir.2000), the Eighth

Amendment's protections do not necessarily extend to mere verbal sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).   As noted, Kranich's conduct of the strip search was in accordance with DPSCS and DOC regulations.   While Brightwell may have found the exchange unpleasant, there is no evidence that Kranich acted outside his authority.   He is entitled to summary judgment.

## II.    Verbal Threats

Brightwell alleges that in October of 2017, Lt. Lester, a correctional employee not named as a Defendant in this case, and other unidentified correctional staff yelled at him and treated him disrespectfully.   He also claims that Adamolekun told him to stand aside and seemingly claims Kranich verbally abused him by directing his actions during the strip search.   Verbal abuse of inmates by guards, without more, states no claim of assault.   *Henslee v. Lewis*, 153 Fed.App'x. 178, 180 (4th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979).   The conduct alleged in this case may have been unpleasant for Brightwell, but it falls short of acts forbidden by the Fourth, the Fourteenth, or the Eighth Amendments.   *See Pink v. Lester*, 52 F.3d 73, 75 (1995) ("[N]ot all undesirable behavior by state actors is unconstitutional.").

## III.    Medical/Psychological Care

Brightwell's claims that while he was housed at PAX his pain medication was stopped, that he has been denied pain medication at MCI-J, and his request to see a specialist regarding his eyes was denied are all unavailing.

At its core, Brightwell's claims regarding receipt of medical care are that Defendants violated the Eighth Amendment prohibition against cruel and unusual punishment due to their deliberate indifference to his serious medical conditions.   Deliberate indifference to a serious medical need requires proof that, objectively, a prisoner was suffering from a serious medical need

and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko*, 535 F.3d at 241.  Objectively, the medical condition at issue must be serious.  *See Hudson*, 503 U.S. at 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  Brightwell has pointed to no action or inaction by any of the named correctional employees regarding the provision or withholding of medical care.  While the record evidence demonstrates that Brightwell was regularly seen by medical staff, that he regularly declined their suggested coarse of treatment, and that he was in fact provided medical care regularly, despite his recalcitrance, there is simply no evidence that any of the named correctional employees had any personal involvement in Brightwell's medical or psychological care.  Accordingly, they are entitled to summary judgment.

## IV.   Segregation

Brightwell complains about his assignment to administrative segregation and states that he never told staff that he was in fear.  Brightwell was placed on administrative segregation after his encounter with Chief of Security Dean during which Brightwell both refused orders to be escorted

to a different building and advised Dean that he did not go to certain areas because he was afraid of correctional staff.  As a result of the encounter, Brightwell was served with a NOI which alone required his placement on administrative segregation pending resolution of the charges.  Moreover, his reporting his fear of correctional staff provided a basis for his placement on administrative segregation.  Brightwell's complaints about his assignment and retention on administrative segregation are unavailing.

It is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison verses another, absent a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976); s*ee also Sandin v. Conner*, 515 U.S. 472, n.2 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).  A liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U. S. at 484.

Assignment to administrative segregation does not create an atypical and significant hardship.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life).  The Supreme Court found that conditions in a super-maximum prison where human contact and communication between cells was forbidden and exercise was limited to one hour a day in a small indoor room were not enough alone to implicate liberty interest.  Rather the duration of the confinement to the prison enforcing those conditions created a liberty interest in avoiding a transfer there. *See Wilkinson v. Austin*, 545 U.S. 209, 223

(2005).  The *Wilkinson* prisoners received only annual reviews and "even inmates with exemplary behavior rarely progress[ed] through [the prison] in less than two years."  *Austin v. Wilkinson*, 189 F. Supp. 2d 719, 740 (N.D. Ohio 2002).  Accordingly, Brightwell's claim that he was denied due process by his being placed on administrative segregation fails.

To the extent Brightwell claims his assignment to administrative segregation violated his rights under the Eighth Amendment, his claim also fails.  He cannot establish that the conditions of administrative segregation were significantly more onerous than general population.

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).  However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society."  *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993).  Brightwell has failed to allege, much less demonstrate any injury arising from his placement on administrative segregation.  Defendants are entitled to summary judgment.

## V.   False Reports

To the extent Brightwell claims that staff lied and abused their authority, his claim fails. Although a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," *Freeman*

*v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), "there are exceptions to this rule." *Cole v. Holloway,*

631 Fed. Appx. 185, 186 (4th Cir. 2016) (citing *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.

1989) (holding that a false disciplinary charge may be actionable under § 1983 if retaliatory)).

Brightwell fails to specify which Defendants lied or abused their authority and in what context.

As discussed *supra* the specific incidents with staff, *e.g.* the strip search conducted by Kranich,

the incident with Adamolekun, and Dean's charging Brightwell with a NOI and placing him on

administrative segregation, were all justified and did not violate Brightwell's rights.  Brightwell's

conclusory claims to the contrary are insufficient to withstand a dispositive motion.  *See District*

*28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir.

1979).

## VI.    Failure to Protect

To the extent Brightwell claims that Defendants failed to protect him from harm, his claim

is not supported by the record.

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain

basic duties on prison officials."  *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016)  (citing

*Farmer*, 511 U.S. at 832).  Those duties "include maintaining humane conditions of confinement,

including the provision of adequate medical care and . . .  'reasonable measures to guarantee the

safety of the inmates.'"  *Id*.  "[N]ot every injury suffered by a prisoner at the hands of another

translates into constitutional liability for prison officials responsible for the victim's safety."

*Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).  A two-part inquiry that includes both an

objective and a subjective component must be satisfied before liability is established.  *See Raynor*,

817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of

a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. Here, Brightwell filed administrative remedies claiming that he was afraid of correctional staff. Despite his allegations he refused to cooperate when Dean, the Chief of Security for the institution, attempted to interview him about his concerns. Despite there being no evidence before the Court that Brightwell faced a substantial risk of serious harm, Brightwell was placed on administrative segregation and was transferred to another facility. Rather than Defendants acting with indifference to Brightwell's claims, Defendants responded and acted to protect Brightwell.

30

They are entitled to summary judgment.

## VII.   Harassment and Retaliation

Brightwell claims that the Warden of MCI-J allows staff to conspire, discriminate, harass, mentally abuse, and retaliate against him.  For the reasons that follow, Defendants are entitled to summary judgment regarding Brightwell's conclusory claims.

In order to prevail on a claim of retaliation, Brightwell "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (*judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusory allegations of retaliation insufficient to state claim). Moreover,  "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d at 74.  Brightwell has failed to allege sufficient facts in support of his retaliation claims and as discussed *infra*, Defendants' conduct toward Brightwell did not violate Brightwell's constitutional rights.

Brightwell also fails to establish that Defendants conspired against him.  To establish a civil conspiracy under § 1983, plaintiff must present evidence that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right.  *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).  An essential element for a claim of conspiracy to deprive plaintiff of a constitutional right,

31

is an agreement to do so among the alleged co-conspirators.  *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir. 1987).  Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy.  *See Murdaugh Volkswagen v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir. 1981).  Brightwell must allege facts establishing that defendants shared a "unity of purpose or a common design" to injure him.  *Am. Tobacco Co. v. United St*ates, 328 U.S. 781, 809-10 (1946).  "A conspiracy may . . . be 'inferred from the things actually done.'" *Murdaugh*, 639 F.2d at 1075 quoting *Overseas Motors, Inc. v. Imported Motors Ltd., Inc.*, 375 F. Supp 499, 532 (E.D. Mich. 1974).  However, circumstantial evidence consisting of "coincidence piled on coincidence" are insufficient where the "proof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law.  *Murdaugh*, 639 F.2d at 1075.  Brightwell's claims of conspiracy are conclusory and without support in the record.  Defendants are entitled to summary judgment.

## VIII.   Due Process in Disciplinary Hearing

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).  In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves

complex issues; and (5) an impartial decision-maker.  *See Wolff*, 418 U.S. at 564-66, 592.  There

is no constitutional right to confront and cross-examine witnesses or to retain and be appointed

counsel.  *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501,

504-05 (4th Cir. 2004).  As long as the hearing officer's decision contains a written statement of

the evidence relied upon, due process is satisfied.  *See Baxter*, 425 U.S. at 322, n.5.  Moreover,

substantive due process is satisfied if the disciplinary hearing decision was based upon "some

evidence."  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Tyler v. Hooks*,

945 F. 3d 159, 171 (4th Cir. 2019) ("the 'some evidence' standard is extremely broad in scope and

presents a very low burden for prisons officials to meet.")  Federal courts do not review the

correctness of a disciplinary hearing officer's findings of fact.  *See Kelly v. Cooper*, 502 F. Supp.

1371, 1376 (E.D. Va. 1980).  The findings will only be disturbed when unsupported by any

evidence, or when wholly arbitrary and capricious.  *See Hill*, 472 U.S. at 456; *see also Baker v.

Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F3d at 171-72.  As long as there is

some evidence in the record to support a disciplinary committee's factual findings, a federal court

will not review their accuracy.

Here, while Brightwell claims that he was improperly removed from his disciplinary

hearing, the charges against him were dismissed by the institution and converted to an incident

report.  He did not face the loss of good conduct credits and therefore received all the process he

was due.  Moreover, his assignment to administrative segregation was both in response to the NOI

and to facilitate his evaluation for protective custody housing.  Brightwell's due process rights

were not violated during his adjustment proceeding and Defendants are entitled to summary

judgment.

## IX.    Administrative Remedy Process

To the extent Brightwell claims there were problems with the processing of his ARPs, his claim likewise fails. While the long-standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F.3d at 75, with the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the issue is less clear. The PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner. The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further clarification regarding exhaustion as a pleading requirement was announced by the United States Court of Appeals for the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id*. at 681.

To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense. *Id*. at 682. Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause. Assuming, *arguendo*, that Defendants did not satisfactorily investigate or respond to Brightwell's remedy requests, his claim fails as he has not alleged, much less demonstrated, any injury as a result of the alleged failure to sign off or process his ARPs.[8]

## X.    Violation of Policy and State Claims

---

[8] Given Brightwell's complaints about the ARP process, the Court will not consider Defendants' contention that some of Brightwell's claims have not been properly exhausted through the grievance process.

To the extent Brightwell contends that Defendants violated their own policies or procedures his claim fails.  A violation of prison policy alone does not state a Fourteenth Amendment due process violation.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*).

Brightwell claims that the acts and omissions of Defendants violated Maryland state law and he invokes this Court's pendent jurisdiction to entertain his state law claims pursuant to 28 U.S.C. § 1367. Section 1367(a) grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Because Brightwell's constitutional claim fails, the Court declines to exercise supplemental jurisdiction over his state law claim.  *See* 28 U.S.C. § 1367(c)(3).  The state law claims are dismissed without prejudice.

## XI.   Supervisory Defendants

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from citizen suits in federal court absent state consent or Congressional action.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  The State of Maryland has not waived such immunity for claims brought pursuant to § 1983.  Accordingly, Defendants are immune from suit for actions taken in their official capacity.

As to actions taken in Defendants Warden of MCI-J, Commissioner of Correction, Executive Director of the IGO F. Todd Taylor and Deputy Director of the IGO Robin Woolford's

individual capacity, Brightwell fails to allege sufficient facts against them.  These Defendants cannot be held liable simply because they each occupied a supervisory position, as the doctrine of respondeat superior does not apply to § 1983 claims.  *Trulock*, 275 F.3d at 402; *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff.  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor has actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *Id.*; *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Brightwell has not shown that his constitutional rights were violated.  In addition, his conclusory claims, unsupported by specific facts, do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability.  *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse").  Nor has he put forward any evidence that Defendants Warden of MCI-J, Commissioner of Correction, Executive Director of the IGO F. Todd Taylor and Deputy Director of the IGO Robin Woolford are liable pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, for unconstitutional actions taken pursuant to an official policy, custom, or practice.  436

U.S. 658, 690-91 (1978).

Brightwell's claims against Defendants Warden of MCI-J, Commissioner of Correction, Executive Director of the IGO F. Todd Taylor and Deputy Director of the IGO Robin Woolford shall be dismissed.

### Conclusion

Accordingly, Brightwell's pending motions ARE DENIED. Brightwell's state law claims and claims against "Patuxent Institution Chronic Care Doctor of 1/15/17 to 6/14/17," "MCI-J Hospital Administrator," MCI-J Chronic Care Doctor", IID Supervisor",  "Jane and John Doe's IID", and Audrey Brown ARE DISMISSED. Defendants Warden of MCI-J, the Commissioner of Correction, Executive Director of the Inmate Grievance Office (IGO) F. Todd Taylor, Deputy Director of the IGO Robin Woolford, former Captain Shanea Ross, Sgt. Abiodun Adamolekun, Institutional Administrative Remedy Procedure (ARP) Coordinator for MCI-J Sgt. Sheila Schmitt, C.O. II Kellen Kranich, and Chief of Security Robert Dean's Motion for Summary Judgment IS GRANTED.[9]

A separate Order follows.


___9/15/2020_____    
Date

_____/s/_____    
RICHARD D. BENNETT  
UNITED STATES DISTRICT JUDGE

---

[9] In light of the Court's ruling, an analysis of the Defendants' argument regarding qualified immunity is not necessary.